UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

Present: The Honorable   CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Shelley Kaufman | Ann Maurer |

**Proceedings:**    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** (filed 11/24/2008)

## I.    INTRODUCTION

On October 29, 2009, plaintiff Edmond Ovasapyan ("plaintiff") filed the instant action in Los Angeles County Superior Court against defendants City of Glendale ("the City"), Arthur Frank ("Detective Frank"), Ian Grimes ("Detective Grimes"), Matthew Irvine ("Detective Irvine") (collectively, "defendants"), and Does 1 through 25.  Plaintiff asserts claims for violation of 42 U.S. C. § 1983 against defendant officers and Does 1 through 10, and liability under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), against the City and Does 11-25.  On January 11, 2008, defendants removed the action to this Court.

On November 24, 2008, defendants filed the instant motion for summary judgment.  On December 9, 2008, plaintiff filed an opposition.  A reply was filed on December 15, 2008.  On December 16, defendants filed an objection to plaintiff's Statement of Genuine Issues.  A hearing was held on December 22, 2008.  After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.    FACTUAL BACKGROUND

On November 1, 2008, at approximately 12:35 p.m., Carmen Shahnazari ("Ms. Shahnazari") was home at approximately noon when at least two men forcibly entered her home, stating that they were looking for her son Sevan.  Plaintiff's Statement of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

Genuine Issues ("Pl's SGI") ¶ 103; Mot. at 5. While the men were in Ms. Shahnazari's house looking for money, Christopher Shahnazari, Ms. Shahnazari's son, came home Pl's SGI ¶ 103; Mot. at 5. At approximately 12:35 p.m. Christopher Shahnazari was fatally shot by one of the men. Pl's SGI ¶ 101; Mot. at 5.

Subsequent to the shooting, Ms. Shahnazari was interviewed by Detective Irvine, both outside of her home and later at the police station, about the individuals who entered her home. Pl's SGI ¶ 105; Mot. at 5. During the interview, Ms. Shahnazari described the man who had shot her son. Defendants' Statement of Uncontroverted Fact ("Defs' SUF") ¶ 4; Pl's Opp'n to Def's SUF ¶ 4. Officers showed Ms. Shahnazari photographs, one of which was a photograph of plaintiff. Def's SUF ¶ 7; Pl's Opp'n to Def's SUF ¶ 7. In addition, officers interviewed Ms. Shahnazari's neighbors, who reported seeing a black Honda parked in front of Shahnazari house at the time of the murder. Def's SUF ¶ 8; Pl's Opp'n to Def's SUF ¶ 8.

On November 1, 2005, GPD officers arrested plaintiff pursuant to two outstanding warrants unrelated to the murder of Christopher Shahnazari. Def's SUF ¶ 1; Pl's Opp'n to Def's SUF ¶ 1. Subsequent to his arrest, plaintiff was interviewed by Detective Irvine and Detective Frank. Def's SUF ¶ 12; Pl's Opp'n to Def's SUF ¶ 12. During the interview, plaintiff also stated that he had left his work site for lunch to go to a Home Depot in Glendale around the time of the murder, and that he was driving a black Honda. Def's SUF ¶¶ 15-16; Pl's Opp'n to Def's SUF ¶¶ 15-16.

Later in the evening of November 1, 2005, while plaintiff was still in custody on the outstanding warrants, plaintiff was arrested for the murder of Christopher Shahnazari. Mot. at 7; Pl's Opp'n to Def's SUF ¶ 1. On November 4, 2005, Detective Frank presented the case to Deputy District Attorney Susan Navas ("DA Navas") for filing. Pl's SGI ¶ 110; Def's SUF ¶ 18. DA Navas charged plaintiff with the murder of Christopher Shahnazari. Def's SUF ¶ 8; Pl's SGI ¶ 113.

On December 13, 2005 and December 14, 2005, a preliminary hearing was held. Def's SUF ¶ 22; Pl's Opp'n to Def's SUF ¶ 22. At the end of the preliminary hearing, the court ordered that plaintiff be held to answer.

In May, 2006, Detective Frank learned that a DNA match had been made on a baseball hat that had been found by Sevan Shahnazari on November 2, 2005, at the scene

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|----------|---------------------|------|-------------------|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

of the crime. Def's SUF ¶ 24. Pl's Opp'n to Def's SUF ¶ 24. Detective Frank interviewed the suspect to whom the DNA match was made, who confessed to murdering Christopher Shahnazari, identified other individuals who were involved, and stated that plaintiff was not involved in the murder. Def's SUF ¶¶ 24-25; Pl's Opp'n to Def's SUF ¶¶ 24-25. Detective Frank provided this information to DA Navas. Def's SUF ¶¶ 24-25; Pl's Opp'n to Def's SUF ¶¶ 24-25. In May, 2006, a meeting was held between Detective Frank, DA Navas, and DA Navas' supervisor, Richard Burns, III. Def's SUF ¶ 30; Pl's Opp'n to Def's SUF ¶ 30. A live-line up was thereafter conducted, at which Ms. Shahnazari positively identified the suspect who confessed to murdering her son, and stated that she had misidentified plaintiff. Def's SUF ¶ 33; Pl's Opp'n to Def's SUF ¶ 33. On June 21, 2006, the District Attorney's office requested that plaintiff be released on his own recognizance. Def's SUF ¶ 35; Pl's Opp'n to Def's SUF ¶ 35. On July 7, 2006, the case against plaintiff was dismissed on a motion by the District Attorney's office. Def's SUF ¶ 36; Pl's Opp'n to Def's SUF ¶ 36.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Abromson v. American Pacific Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|----------|----------------------|------|-------------------|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

### A.   COLLATERAL ESTOPPEL

Defendants first argue that the doctrine of collateral estoppel prevents plaintiff from litigating his Section 1983 claim, because plaintiff has already had the opportunity to litigate the question of whether there was probable cause for his arrest at the preliminary hearing subsequent to his arrest.  Mot. at 12.  To support this proposition, defendants rely on Haupt v. Dillard, 17 F.3d 285 (9th Cir. 1994).  In Haupt, the Ninth Circuit found that "the probable cause determination at [plaintiff's] preliminary hearing, affirmed by denial of his petition for a writ of habeas corpus, was sufficiently conclusive of the issue to preclude its relitigation" under the guise of a Section 1983 claim for malicious prosecution and a Fourth Amendment claim for unreasonable search and seizure.  Haupt, 17 F.3d at 289-290.  The Haupt court based its decision on an interpretation of Nevada law; therefore, the Court will examine California law to see if the principles articulated in Haupt are applicable to plaintiff's case.[1]  Under California law:

> A prior determination by a tribunal will be given collateral estoppel effect when (1) the issue is identical to that decided in a former proceeding; (2) the issue was actually litigated and (3) necessarily

---

[1] See Allen v. McCurry, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . .").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                     O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|----------|----------------------|------|-------------------|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

decided; (4) the doctrine is asserted against a party to the former
action or one who was in privity with such a party; and (5) the former
decision is final and was made on the merits.

Kelly v. Vons Companies, Inc., 67 Cal. App. 4th 1329, 1339 (1998).  "The party
asserting collateral estoppel bears the burden of establishing these requirements."  Lucido
v. Superior Court, 51 Cal. 3d 335, 341 (1990).

   In McCutchen v. City of Montclair, 73 Cal. App. 4th 1138, 1144 (1999), the
California Court of Appeal considered the Haupt decision in light of the California
standard for collateral estoppel.  The court concluded that the requirements for collateral
estoppel in Nevada and California were substantially similar, and found that the Ninth
Circuit's opinion in Haupt was "well reasoned and supported by California law."
McCutchen, 73 Cal. App. 4th at 1145.   The McCutchen court agreed with the Haupt
court that the issue of probable cause "will typically be actually litigated and necessarily
decided at the preliminary hearing."  Id. at 1147.

   Defendants argue that plaintiff's case depends on the question of whether probable
cause existed for his arrest.  Mot. at 12.  Defendants argue that, at plaintiff's preliminary
hearing, the People called four witnesses, one of whom was Ms. Shahnazari, who
identified plaintiff as one of the suspects who was in her house on November 1, 2005.
Mot. at 12.  Plaintiff, however, did not call any witnesses.  Mot. at 12.  At the end of the
preliminary hearing, the court ordered that plaintiff be held to answer.  Mot at 12.
Therefore, defendants argue, the issue of probable cause has already been litigated, and
plaintiff is collaterally estopped from re-litigating the issue.  Mot. at 12.

   Plaintiff, however, argues that collateral estoppel does not apply, because plaintiff
did not have a full and fair opportunity to litigate the issue of probable cause at the
preliminary hearing, and in fact, for tactical reasons, chose not to fully litigate this issue
Opp'n at 6, citing Haupt,73 Cal. App. 4th at 289 ("for tactical reasons a litigant may well
choose not to litigate probable cause fully during a criminal prosecution, and that in such
a case estoppel might be inappropriate"); see also McCutchen, 73 Cal. App. 4th at 1147.
   Specifically, plaintiff argues that, in the middle of the preliminary hearing,
plaintiff's counsel obtained information about an  assault by Sevan Shahnazari,
Christopher Shahnazari's brother, on an individual who Sevan Shahnazari believed was
responsible for the murder.  Opp'n at 7.  Plaintiff argues that, despite this new

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

information, the court was unwilling to give plaintiff a recess, which, plaintiff argues, put his counsel in an untenable position. Mot. at 8. As a result, plaintiff argues, his counsel failed to fully litigate the issue of probable cause.

Plaintiff cites the transcript of the preliminary hearing, in which plaintiff's counsel stated to the court:

> I mean you're asking me to proceed right now when I've got other information. I don't believe that a competent defense lawyer would proceed at his point based upon the fact that there is other information out there which I have not investigated. For you to tell me, with all due respect, Your Honor, to go forward when I have a potential with another person who has had his head cracked open, is the term that was used to me, by the victim's brother Sevan . . . and we've got a situation where there is an identification and the identification was not positive yet, when we come to court, it is positive, and you're asking me to continue that before I've seen the Sound-X [photographs] before I've seen a report, before I can question this woman and pin her down. It would be incompetency and ineffective assistance of counsel as a matter of law.

Preliminary Hearing Trans. at 125.

Plaintiff's counsel later stated, regarding his cross-examination of Ms. Shahnazari:

> . . . until I see a Sound-X, I don't know strategically which way to cross-examine her. That's the problem. I mean I'm dealing in a vacuum. I can think exactly what I would want to do once I've laid eyes on a Sound-X at this point.

Preliminary Hearing Trans. at 128-29.

Plaintiff's counsel received the photographs of the person who was attacked by Sevan Shahnazari at the lunch break. Plaintiff's counsel noted that the person resembled plaintiff. Preliminary Hearing Trans. at 189. In light of the new information, plaintiff's counsel stated to the court:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|----------|----------------------|------|-------------------|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

> I'm not prepared to go forward. I need to investigate this. This was in the possession of the Glendale PD. I am taking Detective Frank at his word that he had not made any connection between the two. . . If you want me to make an ex parte offer as to what I would do, I'm happy to do it, but I'm not revealing any more of the strategy in this case or what I know in this case in open court. I think I've made more than an ample showing that I need additional time . . .

Preliminary Hearing Trans. 189-91.

Plaintiff argues that, as a result of the court's failure to allow his counsel to investigate this new evidence, plaintiff's counsel was significantly impaired in his representation of plaintiff at the preliminary hearing and made a decision not to litigate the issue of probable cause. Opp'n at 10. For example, plaintiff argues, his counsel chose not to recall and continue cross-examining Ms. Shahnazari because of the court's refusal to allow him to investigate. Plaintiff's counsel stated:

> Well, I don't know how the court can possibly – or how I could cross-examine her, having been given the report in – basically 90 minutes to digest it and not have a chance to talk to my investigator or anybody else. . . Just because I have the right to cross examine, I think it has to be based on whether or not I've had sufficient time to investigate it, and I clearly haven't.

Preliminary Hearing Trans. at 242-43. In addition, plaintiff's counsel declined to put on an affirmative defense, stating "No, I'm not ready because I didn't have the incident report which cross references this case." Preliminary Hearing Trans. at 304.

Defendants, however, argue that plaintiff's counsel's alleged decision not to litigate the issue of probable cause due to the evidence of the assault by Sevan Shahnazari was not a "tactical decision." Reply at 5. In addition, defendants argue, plaintiff has failed to explain how the evidence of an assault prevented plaintiff's counsel from litigating the issue of probable cause. Reply at 6. Finally defendants argue, even if the assault by Sevan Shahnazari was determined to be against one of the individuals responsible for the murder of Christopher Shahnazari, the evidence would nevertheless not have negated probable cause to arrest plaintiff, as there were multiple suspects

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | | Date | December 22, 2008 |
|---|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | | |

involved in the murder.  Reply at 5.

Plaintiff also argues that, even if the court finds that plaintiff was able to fully litigate the probable cause issue at the preliminary hearing, collateral estoppel nevertheless does not bar his claim, as plaintiff must be afforded the opportunity to rebut the prima facie evidence of probable cause presented at the preliminary hearing.  Opp'n at 12, citing Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir 2004) ("California, as in virtually every other jurisdiction, it is a long-standing principle of common law that a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes prima facie – but not conclusive – evidence of probable cause").  Plaintiff specifically argues that he can rebut the showing of probable cause at the preliminary hearing by demonstrating that the criminal prosecution was undertaken in bad faith as a result of wrongful official conduct, and that, therefore, collateral estoppel does not apply.  Opp'n at 13, citing id. (prima facie case of probable cause may be rebutted "by showing that criminal prosecution was inducted by . . . wrongful conduct undertaken in bad faith.")

The Court finds that plaintiff has presented sufficient evidence to raise a question of fact as to whether his attorney made a tactical decision not to fully litigate the issue of probable cause at plaintiff's preliminary hearing. The preliminary hearing transcripts demonstrate that, at the preliminary hearing, plaintiff's counsel believed that he needed additional time to investigate newly-acquired evidence, and, because the court declined to grant him additional time, he made the decision not to fully cross-examine Ms. Shahnazari or to raise an affirmative defense.  Because plaintiff did not have a full and fair opportunity to litigate the issue of probable cause at plaintiff's hearing, collateral estoppel does not apply.  See Haupt,73 Cal. App. 4th at 289; McCutchen, 73 Cal. App. 4th at 1147.

Therefore, the Court finds that plaintiff is not collaterally estopped from bringing the instant action against defendants.

**B.    PROBABLE CAUSE FOR PLAINTIFF'S ARREST**

"A police officer has probable cause to effect an arrest if 'at the moment the arrest was made ... the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

believing' that the suspect had violated a criminal law." <u>Orin v. Barclay</u>, 272 F.3d 1207, 1218 (9th Cir.2001) (quoting <u>Beck v. Ohio</u>, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

Defendants first argue that plaintiff was initially arrested pursuant to two valid outstanding warrants. Mot at 12. Therefore, they argue, the initial arrest of plaintiff was lawful. Mot. at 12.

Defendants next argue that probable cause existed for plaintiff's arrest for the murder of Christopher Shahnazari as a matter of law, based on the following information, which was known at the time of arrest:

> Plaintiff had a prior relationship with Sevan Shahnazari; Carmen Shahnazari stated that one of the suspects looked familiar to her; Carmen Shahnazari stated that the suspect who looked familiar to her had previously done tile work on a bathroom at her business and at another property her son Sevan had been renovating; the names of the workers were provided by Sevan Shahnazari, one of whom was [plaintiff]; the description of the suspect provided by Carmen Shahnazari – tiny (more than 5'7") with a thin build, clean-shaven with dark short hair, blue shirt and Armenian speaking, 24-25 years old; the identification of Ovasapyan by Carmen Shahnazari from a six pack photo line up and of the booking photo; information about the involvement of a black Honda; information that Ovasapyan drove a black Honda; Ovasapyan's photo obtained from the Department of Motor Vehicles and his physical description from DMV which identified him as a male, 5'8", 135 pounds, date of birth February 23, 1981 (making him 24 at the time of the incident); the fact that Ovasapyan could not definitively account for his whereabouts at the time of the murder and the admissions made by Ovasapyan during his post-arrest interview including that he installs tile, that he was working for Sevan Shahnazari, that he did work at Sevan's mother's beauty salon, and that he and Sevan had a conflict relating to money.

Mot. at 15; Frank Decl. ¶ 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

Plaintiff, however, argues that he was not legally arrested based on probable cause.

## 1.   ARREST PURSUANT TO OUTSTANDING WARRANTS

First, plaintiff argues that his initial arrest was not legal, because it was pretextual. Specifically, plaintiff argues that he was arrested on two outstanding warrants for minor violations – a probation violation, and for driving without a license  – only so as to allow the police to search for evidence of an unrelated crime for which they lacked probable cause to arrest him.  Opp'n at 13.  Plaintiff argues that no reasonable officer would have arrested plaintiff on the outstanding warrants, absent suspicions of plaintiff's involvement in the murder, as evidenced by the fact that there were seemingly no attempts to arrest plaintiff in the six previous months after the warrants were issued.  Opp'n at 14-15. Plaintiff argues that this pretextual arrest was therefore contrary to law and lacking in probable cause.  Opp'n at 13.

To support this argument, plaintiff cites United States v. Mota, in which the court stated "an arrest may not be used as a pretext to search for evidence without a search warrant where one would ordinarily be required under the Fourth Amendment."  982 F.3d 1384, 1386 (9th Cir. 1993).  The court explained that a "search is pretextual when the motivation or primary purpose of the arresting officers is to arrest a defendant for a minor offense so as to allow police to search for evidence of some other unrelated offense for which police lack probable cause to arrest or search."  Id.; see also United States v. Cannon 29 F.3d 472, 476 (9th Cir. 1994) (in order to determine whether an inventory search is valid, even where the searching officer has an investigatory motive,"courts should inquire whether a reasonable officer would have made the stop anyway, apart from his suspicions about other more serious criminal activity.")

However, the facts of Mota are distinguishable from the instant action.  In Mota, the court found defendant's arrest to be unreasonable in light of the fact that the officers did not have "legal authority to take appellants into custody for the infraction" – operating without a valid business license – for which he was initially arrested, because the relevant Penal Code provision provided that a suspect could only be taken into custody for operating without a valid business license if the suspect did not have identification or refused to sign a Notice to Appear.  Id. at 1388-1389.  Here, by contrast, there is no doubt that defendants had the legal authority to arrest plaintiff on the two

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|----------|----------------------|------|-------------------|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

outstanding warrants.

In addition, plaintiff cites <u>Taglavore v. United States</u>, 291 F.2d 262, 267 (9th Cir. 1961), in which the court held that the police conducted an illegal search and seizure when they used a traffic warrant "as a mere excuse to search appellant for marijuana cigarettes." The Court noted that "[w]here the arrest is only a sham or a front being used as an excuse for making a search, the arrest itself and the ensuing search are illegal." <u>Id</u>. In finding the arrest at issue to be illegal in <u>Taglavore</u>, the Court noted, "[i]t is a matter of common knowledge, and it was admitted by one of the arresting officers at the trial, that it is not ordinary police procedure to physically take a person into custody for a minor traffic violation such as appellant allegedly committed, especially when no traffic ticket or citation has theretofore been given." <u>Id</u>.

Plaintiff argues that, similarly, it is not ordinary police procedure to actively seek out and arrest persons with outstanding warrants, and, therefore, no reasonable officer would have arrested plaintiff based on the outstanding warrants. Opp'n at 14, citing <u>id</u>. However, plaintiff's analogy to <u>Taglavore</u> is not convincing. Unlike in <u>Taglavore</u>, the warrants in the instant case had been issued prior to, rather than contemporaneously with, the incident which gave rise to suspicion. <u>See id</u>. Furthermore, unlike in <u>Taglavore</u>, where the same officer was involved in the drug investigation and the issuing of the traffic warrant, the warrants in this case were not issued by the officers involved in investigating the murder of Christopher Shahnazari. <u>See id</u>.

Because <u>Taglavore</u> and <u>Mota</u> are distinguishable from the instant action, the Court finds plaintiff's arguments that a reasonable officer would not have arrested him on his two outstanding warrants to be unconvincing. However, the inquiry does not end there, as the Court must next consider whether defendants had probable cause as a matter of law to arrest plaintiff for murder.

**2.      PLAINTIFF'S ARREST FOR MURDER**

**a.      MS. SHAHNAZARI'S IDENTIFICATION OF PLAINTIFF**

Defendants state that Ms. Shahnazari's identification of plaintiff as one of the assailants, first on November 1, 2005 in a photographic line-up, and later on November 2, 2005, when Ms. Shahnazari was shown plaintiff's booking photograph, provided

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

probable cause for plaintiff's arrest.  Mot. at 15.  Plaintiff, however, argues that the November 1, 2005 identification was in fact a "non-identification," and that the procedures used on November 2, 2005 were tainted, and that, therefore, Ms. Shahnazari's statements did not provide probable cause.

Whether the identifications supplied by Ms. Shahnazari provide probable cause for plaintiff's arrest for murder involves two related inquiries: (1) Did the officers employ an identification procedure so impermissibly suggestive as to give rise to a substantial likelihood of misidentification? See Simmons v. United States, 390 U.S. 377, 384 (1968).  If so, (2) did the witnesses exhibit sufficient indicia of reliability to protect the integrity of their identifications? See United States v. Hanigan, 681 F.2d 1127, 1133 (1982).  With regard to the second inquiry, a suggestive photo array "may still serve as a basis for probable cause if sufficient indicia of reliability are present."  Torres, 2008 WL 4878904, * 8.  "Indicia of reliability include: 1) the opportunity to view the criminal at the time of the crime; 2) the degree of attention paid to the criminal; 3) the accuracy of the prior descriptions of the criminal; 4) the level of certainty demonstrated at the time of the confrontation; and 5) the length of time between the crime and the confrontation."  Id.

Plaintiff argues that there are disputed facts as to whether Ms. Shahnazari's identification of plaintiff as one of the assailants in the murder of Christopher Shahnazari was tainted.  Opp'n at 15.  Plaintiff submits a transcript of the interview of Ms. Shahnazari, conducted by Detective Irvine on November 1, 2005, the day that Christopher Shahnazari was killed.  See Pl's Ex. 2.  In this transcript, Ms. Shahnazari provided a general description of the assailant, stating that he was an Armenian male, approximately 24 years old, short, and with dark hair.  Opp'n at 4; Trans. of Interview with Carmen Shahnazari ("C. Shahnazari Trans.") at 5-6.  During the interview, Ms. Shahnazari also stated that the man looked familiar to her, stating

> I think that guy . . . I am not sure, you know . . . but it is very difficult but I think that guy . . . that guy fixed my shop . . . in the bathroom . . . and my son bring the guy who fixed the floor.

Shahnazari Trans. at 10.  Ms. Shahnazari went on to clarify that the person about whom she was speaking had remodeled the bathroom in her beauty shop about two months prior.  Shahnazari Trans. at 11.  Ms. Shahnazari further stated that the men who had remodeled her bathroom knew her son Sevan. Shahnazari Trans. at 11-12.  Plaintiff notes that Ms.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

Shahnazari stated that she was not sure if the suspect who came to her door was the same person who remodeled her bathroom.  See, e.g., Shahnazari Trans. at 13 ("It's because I'm not sure, that's why I opened the door").

Detective Irvine subsequently identified plaintiff as one of the men who remodeled Ms. Shahnazari's bathroom and determined that he matched her description of the assailant. Reply at 10. Later that evening, Detective Irvine brought Ms. Shahnazari a group of photographs, including one of plaintiff.  Transcript of Photograph Line-up, Carmen Shahnazari ("Shahnazari Photo. Trans.") at 1; Opp'n at 16.  As Ms. Shahnazari looked at the photographs, Ms. Shahnazari pointed to the photograph of plaintiff, and stated "This looks familiar for me, but this is not the guy."  Shahnazari Photo. Trans. at 1. Ms. Shahnazari further stated that the assailant looked "younger" than plaintiff, and again stated "It looked like that but he is not the guy."  Shahnazari Photo. Trans. at 2.  Ms. Shahnazari also stated about plaintiff's photograph, "the face, everything is look like him, exactly, everything, but it was not him."  Shahnazari Photo. Trans. at 3.  Finally, at the end of the photo line-up, Ms. Shahnazari stated, again with regard to plaintiff's photograph, "You know everything was very fast.  Yeah, but this is look like him.  Not him.  I don't know."  Shahnazari Photo. Trans. at 4.  Subsequent to the photo line-up with Ms. Shahnazari, Detective Frank added murder charges to the arrest charges against plaintiff. Frank Decl. ¶ 12.

Plaintiff argues that a reasonable jury could find that the "non-identifications" made by Ms. Shahnazari did not create probable cause to hold plaintiff on murder charges. Opp'n at 16, citing Torres v. City of Los Angeles, ___ F.3d ___ 2008 WL 4878904 *7 (9th Cir. 2008) ("under the law of this Circuit, mere resemblance to a general description is not enough to establish probable cause.")

On November 2, 2005, following plaintiff's arrest for murder, Ms. Shahnazari was shown a photograph of plaintiff taken at his booking.  Frank Decl. ¶ 13; Opp'n at 16.  The report written by Detective Irvine states that, when shown the photograph of plaintiff, Ms. Shahnazari "said that the photograph was indeed that of the man she first saw through her blinds [the day of the murder] . . . and who she recognized as one of the workmen who did the remodel of her business bathroom"] See Kaufman Decl. Ex. 9 ((Supplemental Report 002 at 3).  Plaintiff's description of the identification is as follows:

Defendants showed Ms. Shahnazari, without any other photographs,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

plaintiff's booking photograph.  Since Ms. Shahnazari was still concerned she was wrong, she was assured that her identification would not put this man in jail.  This interview is conveniently not taped.[2]

Opp'n at 16.

Plaintiff argues that a reasonable jury could find that this identification was tainted, because Ms. Shahnazari was only shown one photograph, and because "she was assured that her identification would not be the culprit in putting someone in jail."  Opp'n at 17, citing United States v. Wade, 388 U.S. 218 (1967) (a "major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification").  Defendants, however, counter that in a situation in which a witness thought she knew the suspect, showing a single photograph of the person named or described is appropriate procedure.  Reply at 8; Frank Supp. Decl. ¶ 3. Defendants further argue that Ms. Shahnazari's previous equivocal statements, in which she indicated that the suspect looked exactly like plaintiff, only younger, are explainable by the fact that plaintiff did in fact look younger in person than in the photograph used in the original photo line-up.  Reply at 9; Frank Decl. ¶ 11.

**b.      PLAINTIFF'S CAR**

Plaintiff further argues that the fact that plaintiff drove a black Honda, the type of car that a neighbor had identified as being parked outside of the house at the time of the murder of Christopher Shahnazari, is not sufficient to create probable cause, given the fact that such cars are common, and given that the officers do not appear to have tried to obtain further information about the type of Honda present at the scene of the murder.  Opp'n at 17.

---

[2] In Detective Irvine's Supplemental Report 002, he states that Ms. Shahnazari insisted that she "did not want to be the cause of another mother's son going to jail," but that Detectives Irvine and Frank assured her that "any case against Ovasapyan was going to be built on a lot more than just her identification of a photograph."  Kaufman Decl. Ex. 10 (Supplemental Report 002) at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

### c.   ALLEGED EXCULPATORY EVIDENCE

Plaintiff also argues that a jury could find that defendants lacked probable cause to arrest plaintiff based on various evidence that was available to defendants at the time that plaintiff was arrested, which indicated that he was not, in fact, involved in the murder of Christopher Shahnazari.  Plaintiff argues that defendants' failure to consider this evidence indicates that the officers focused solely on him as a suspect, to the exclusion of other possible leads, and that a jury could reasonably conclude that their failure to consider exculpatory evidence was motivated by bad faith.  Opp'n at 18

First, plaintiff argues that cell phone records, obtained by defendants on November 3, 2005, indicated that, within five minutes of the murder, plaintiff was eleven minutes away from the scene.  Opp'n at 17; Pl's SGI ¶ 116; Ross Decl. Ex. A (Undated search warrant for telephone seized from plaintiff); Exs. B, C (Defs' cell phone records, faxed from Nextel to GPD, on November 2 and 3, 2005); Exs. E, F, G (maps and documents produced by the City, in which distance from the cell site area at 12:41 p.m. to the murder site is shown as 11 minutes, while the dispatch of the 911 call to the murder scene is listed as 12:35:56).  Plaintiff further argues that Detective Frank acted unreasonably when he failed to determine with whom plaintiff was speaking on his cell phone when he was five miles from the murder site.  Opp'n at 17.

Defendants, however, argue that the cell tower records provided information only about the location of plaintiff's phone, and that there was no way to establish that plaintiff was with his phone at the time of the murder.  Reply at 11.  Defendants further argue that, contrary to plaintiff's assertion, it would not have been impossible for plaintiff to have committed the murder and subsequently to have reached the location where the cell phone call was received at 12:41 p.m.  Reply at 11; Frank Supp. Decl. ¶ 6.

Second, plaintiff argues that defendants ignored the alibi provided by Armen Khanyan, a witness who was interviewed by the GPD on November 2, 2005 and who stated that on November 1, 2005, around the time of the murder, he had eaten lunch with plaintiff, subsequent to which plaintiff had left to buy paint at Home Depot.  Opp'n at 17; Pl's SGI ¶ 117; Kaufman Decl. Ex. 13 (Summary Report of Interview with Armen Khanyan) ("On Tuesday, November 1st, [plaintiff] goes to a Carl's Jr. restaurant around noon and brings back lunch for them both.  They eat lunch together.  After lunch, Armen [Khanyan] reports that [plaintiff] went to Home Depot between 1:00pm - 1:30pm to pick

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

up painting supplies and returns at around 2:00pm. [plaintiff] was gone for approximately thirty minutes to one hour").

Defendants, however, counter that Armen Khanyan was not an alibi witness, because the murder occurred between 12:00 p.m. and 12:30 p.m., and his statement did not indicate what time plaintiff was out of Khanyan's presence buying lunch.  Reply at 11. Defendants further not that Armen Khanyan is plaintiff's cousin.  Reply at 11.

Third, plaintiff argues that defendants also ignored evidence that plaintiff had purchased items at Home Depot at 1:40 p.m. the day of the murder, including receipts dated November 1, 2005 at 1:40 p.m., and a video showing plaintiff at Home Depot at 1:40 p.m.  Opp'n at 17; Pl's SGI ¶ 117a; Kaufman Decl. Ex. 10 (GPD Supplemental Report 16, itemizing receipts found in plaintiff's car).  Defendants, however, argue that they did not ignore this evidence, but that, regardless, the evidence did not exculpate plaintiff, given that plaintiff could have committed the murder at 12:30 p.m. and then traveled to Home Depot, which was less than 1.5 miles away from the scene.  Reply at 12; Frank Supp. Decl. ¶ 8.

In considering the evidence presented by both plaintiffs and defendants, the Court finds that there are genuine issues of material fact as to whether defendants had probable cause to arrest plaintiff.  For example, plaintiff has set forth sufficient evidence to raise a question of fact as to whether the statements of Ms. Shahnazari on November 1, 2005 regarding plaintiff's photograph were sufficient to provide probable cause for plaintiff's arrest for murder.  Plaintiff also has raised an issue of fact as to whether the identification procedure used on November 2, 2005 was impermissibly suggestive and, if so, whether Ms. Shahnazari exhibited sufficient indicia of reliability to protect the integrity of the identification.  See Simmons, 390 U.S. at 384; Hanigan, 681 F.2d at 1133.  Furthermore, plaintiff has raised a genuine issue of fact as to whether the statements of Armen Khanyan and the cell phone tower records were sufficient to negate probable cause for his arrest. For the foregoing reasons, the Court finds that it cannot determine as a matter of law that defendants had probable cause for plaintiff's arrest for murder.

**C.    MALICIOUS PROSECUTION**

In order to prevail on a malicious prosecution claim under Section 1983, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004). "Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." Id., citing Smiddy v. Varney, 665 F.2d 261, 266-68 (9th Cir. 1981). "However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." Id.

Defendants argues that because probable cause existed for plaintiff's arrest, because there is no evidence that defendants acted maliciously in arresting plaintiff and in presenting the matter to the District Attorney, and because there is no evidence to rebut the presumption that DA Navas exercised independent judgment in filing charges, plaintiff cannot succeed in a malicious prosecution claim against defendants. Mot. at 18.

Plaintiff, however, argues that defendants provided misleading information to DA Navas, and failed to present her with critical information. Opp'n at 19-21, citing Barlow v. Ground, 943 F.2d 1132, 1136 (9th Cir. 1991) (where prosecutor's only information came from police reports which contained "glaring omissions," "the jury was clearly entitled to conclude that the officers misrepresented the facts to the prosecutor and that these misrepresentations were responsible for the filing of the criminal complaint"). Plaintiff argues that these acts and omissions by defendants were a direct cause of plaintiff being prosecuted, given that DA Navas stated in deposition that she does not rely on anything beside the police reports to make her decision as to whether or not to file a case. Opp'n at 19, citing Deposition of Susan Navas, 19: 20-22.

First, plaintiff argues that Detective Irvine provided misleading reports to DA Navas that Ms. Shahnazari had positively identified plaintiff as the murderer of Christopher Shahnazari. Opp'n at 20. Defendants, however, counter that the reports contained accurate descriptions of the interview of Ms. Shahnazari. Reply at 14. In Supplemental Report 002, a relevant report submitted to DA Navas, Detective Irvine described the identification by stating "the more she talked, the more Carmen felt that the man she first saw at her door today was one of the two men who remodeled her bathroom.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

However, she was still not entirely sure."  Kaufman Decl. Ex. 9 (Supplemental Report 002 at 3).  The report further states that

> On the morning of November 2 . . . Detective Frank showed Carmen a photograph of Ovasapyan taken during his booking.  Carmen said that the photograph was indeed that of the man she first saw through her blinds . . ."

Kaufman Decl. Ex. 9 at 3.  The report also noted

> Carmen kept insisting that, as a mother, she did not want to be the cause of another mother's son going to jail . . . Detective Frank and I assured Carmen that any case against Ovasapyan was going to be built on a lot more than just her identification of him from a photograph.[3]

Kaufman Decl. Ex. 9 at 3.

Plaintiff also argues that defendants failed to submit key evidence to DA Navas, including the interview of plaintiff's alibi witness, Armen Khanyan, and the cellular study which placed plaintiff eleven minutes from the scene of the murder at 12:41 p.m.[4]  Plaintiff also submits the declaration of Detective Frank, wherein Detective Frank states that he could not recall if he provided to DA Navas the report regarding the Home Depot receipts that had been found in plaintiff's car.  Opp'n at 20; Frank Deposition 67:11-12.  Defendants, however, argue that because this evidence was not exculpatory, the failure to

---

[3] Defendants also argue that the reports submitted to DA Navas specifically documented Ms. Shahnazari's equivocation, stating, for example, "Carmen said, 'The face – everything – looks like him, exactly . .  Except Carmen said, the man in the photo looked older than the man who came to her door today.  Therefore, she said, she did not think it was the same guy despite the resemblence."

[4] Plaintiff also argues that defendants failed to submit the interview of Jirar Orfali, plaintiff's boss, who, plaintiff argues, had critical information regarding a telephone call made by Orfali to plaintiff at 12:41 on the day of the murder.  Opp'n at 20.  However, the police report describing the interview of Orfali indicates that Orfali had no recollection of calling or talking to plaintiff on that day.  See Kaufman Decl. Ex. 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

provide it to DA Navas was not material.  Reply at 13-14.

Plaintiff also argues that defendants failed to prepare a report indicating that plaintiff was interviewed, that he accounted for his whereabouts during the time of the murder, and that his account was corroborated by Armen Khanyan.  Opp'n at 20.  Defendants, however, counter that plaintiff did not account for his time during the murder, because his account of his trips to pick up lunch and to Home Depot did not definitively show that he would not have had sufficient time to commit the murder.  Reply at 15.

In light of the evidence submitted and the issues raised by plaintiff, the Court finds that plaintiff has raised a genuine issue as to whether the reports submitted by defendants contained material omissions of relevant evidence, and whether these alleged omissions were responsible for the filing of the criminal complaint.  For the foregoing reasons, the Court finds that it cannot conclude that defendants are entitled to judgment as a matter of law on plaintiff's malicious prosecution claim.

### D.    QUALIFIED IMMUNITY

The Supreme Court enunciated the two-part test for qualified immunity in Saucier v. Katz, 533 U.S. 194 (2001).  First, the court must answer the question: "Taken in the light most favorable to the party asserting the injury do the facts alleged show the officer's conduct violated a constitutional right?"  Id. at 201.  If so, the court must then consider whether the constitutional right was clearly established.  Id.  A right is clearly established only if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.

Defendants argue that, because a reasonable officer, based on the evidence enumerated above, would have believed that probable cause for plaintiff's arrest existed, defendant officers are entitled to qualified immunity.  Mot. at 17.  Plaintiff, however, counters that there is an issue of fact as to whether a reasonable officer would have (1) relied on Ms. Shahnazari's identification; (2) ignored the alibi witness evidence; and (3) ignored the cellular evidence regarding plaintiff's location is an issue, and that, therefore,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

qualified immunity is not appropriate.[5]  Opp'n at 23.

As stated herein, because plaintiff has raised a genuine issue of material fact as to whether a reasonable officer would have relied on Ms. Shahnazari's identification of plaintiff and would have found Armen Khanyan's statement and the cellular evidence to be non-exculpatory, the Court finds that it cannot determine as a matter of law that defendant officers are entitled to qualified immunity.

**E.    CLAIM AGAINST THE CITY**

Defendants argue that, even if defendant officers violated plaintiff's rights, the City nevertheless is not subject to liability under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).  Under Monell, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Id. at 694. Instead, a local government may be liable where the alleged act is performed "in execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id.

Plaintiff argues that the City may be subject to Monell liability, because there is an issue of fact as to whether the City had a policy of inaction in not promptly testing DNA evidence, and specifically in not testing DNA evidence prior to preliminary hearings, and whether such a policy violated plaintiff's rights.  Opp'n at 24.  Plaintiff argues that, had the baseball hat found at the scene of the crime on November 2, 2005 been tested seven months earlier, plaintiff would never have been wrongfully imprisoned.  Opp'n at 25.

"In order to impose liability based on a policy of deliberate inaction, the plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2)

---

[5] Plaintiff also argues that there is a question of fact as to whether Detective Frank acted reasonably in not asking the Sheriff's Crime Lab to rush the DNA testing on the baseball hat, which was found at the scene on November 2, 2005 and which ultimately led to the discovery of the true assailant when the DNA results were completed in May 2006.  Opp'n at 23.  In deposition, Detective Frank stated that he did not ask the Sheriff's Crime Lab to rush in providing results, because he had found that that "doesn't work." Frank Deposition 21: 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|----------|----------------------|------|-------------------|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy [was] the moving force behind the constitutional violation." Berry v. Baca, 379 F.3d 764 (9th Cir. 2004) (reversing summary judgment for defendants, finding that there was a question of fact as to whether the sherif's implementation of administrative policies guiding jail release were unreasonably inefficient as a matter of law).

Defendants, however, counter that the Sheriff's Crime Lab, which performed the DNA tests on the baseball hat, performs DNA testing for most police agencies in Los Angeles County, not exclusively for the City of Glendale. Mot. at 19; Frank Decl. ¶ 17. Defendants argue that Detective Frank therefore had no control over whether or not evidence was tested or how quickly evidence was tested in the Crime Lab. Mot at 19. Thus, defendants argue, regardless of the City's policies, it has no power to compel the Sheriff's Crime Lab to work faster. Reply at 17.

Furthermore, defendants argue that the results from the DNA testing of the baseball hat would not have, in and of themselves, exonerated plaintiff from having been involved in the crime, because there were multiple assailants in the crime, and it was only the later statement made by the suspect identified through the DNA evidence which led to plaintiff's release. Mot. at 20.

Finally, defendants cite Tribulski v. County of Los Angeles, 83 Cal. App. 3d 828 (1978), in which the court found that, after drunk driving charges had been filed against plaintiff, a sheriff had no duty to advise the district attorney in charge that blood alcohol tests favorable to plaintiff had come in. In finding that the sheriff had no such duty, the court held "It would put an impossible burden on law enforcement officers to take such action every time they learn of some piece of evidence that might be favorable to a person under arrest." Id. at 230. However, the court also noted that "ordinarily, both the defendant and the district attorney will be aware that within a short time after the arrest the results of a chemical test will be available as evidence of guilt or innocence." Id. at 231. In the instant case, there is no indication that DA Navas or plaintiff knew that the DNA test results were pending.

Based on the arguments, the Court finds that defendant has failed to demonstrate that there is no genuine issue of material fact as to whether the City had a policy of inaction in not promptly testing DNA evidence, and specifically in not testing DNA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                     O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-194 CAS (JWJx) | Date | December 22, 2008 |
|----------|----------------------|------|-------------------|
| Title | EDMOND OVASAPYAN v. CITY OF GLENDALE, ET AL. | | |

evidence prior to preliminary hearings, and whether such a policy violated plaintiff's rights.  Therefore, the Court concludes that it cannot find that as a matter of law that the City cannot be held liable under <u>Monell</u>, 436 U.S. 658.

### F.     DISMISSAL OF DETECTIVE IRVINE

Defendants argue that, even if summary judgment is not granted in their favor, Detective Irvine should nevertheless be dismissed.  Mot. at 15.  Defendants argue that while Detective Irvine arrested plaintiff on outstanding warrants and participated in interviewing plaintiff, Detective Irvine did not arrest plaintiff for murder and had no further involvement in the case other than participating in the service of search warrants and interviewing witnesses and those present when search warrants were served.  Mot. at 15; <u>see</u> Irvine Decl. ¶¶ 5-6.  Defendants further argue that Detective Irvine did not have any communication with the District Attorney's office regarding the filing of charges against plaintiff.  Mot. at 15.

Plaintiff does not address this argument directly.  However, the Court notes that, in addition to the involvement detailed by defendants, Detective Irvine also conducted the interview of Ms. Shahnazari subsequent to the shooting of Christopher Shahnazari, participated in the November 1, 2005 and November 2, 2005 photo identification procedures with Ms. Shahnazari, and wrote reports summarizing these procedures that were later submitted to DA Navas.  <u>See</u> Irvine Decl. ¶ 4.  Because plaintiff has raised genuine issues of material fact regarding the identification procedures used and the content of the reports submitted to DA Navas, the Court finds dismissal of Detective Irvine to be inappropriate.

### D.     CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion for summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 10 |
|--|----|---|-----|
| Initials of Preparer | | CMJ | |